```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
JOZAIDA SANCHEZ,                                                 :
                                                                 :
                            Plaintiff,                           :
                                                                 :     23-CV-8683 (JMF)
                 -v-                                             :
                                                                 :     OPINION AND ORDER
NEW YORK CITY HOUSING AUTHORITY et al.,                          :
                                                                 :
                            Defendants.                          :
                                                                 :
-----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      In this case, Plaintiff Jozaida Sanchez, a former employee of the New York City Housing Authority ("NYCHA"), sues NYCHA and her former supervisor, April Smith, for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. *See* ECF No. 27. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

      The following relevant facts are drawn from the materials submitted by the parties and — unless otherwise noted — are either undisputed or described in the light most favorable to Sanchez. *See, e.g., Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

      In November 2020, Sanchez began working at NYCHA as a "Caretaker J," a position responsible for janitorial work in NYCHA developments. *See* ECF No. 30 ("Defs.' SOMF"), ¶¶ 23-25. Sanchez was subject to a probationary period that was set to expire in January 2022, during which time she could be terminated for any lawful reason without a pre-termination

hearing.  *See id.* ¶¶ 17, 25, 33.  Sanchez was assigned to work at Grant Houses, a NYCHA public housing development located in Manhattan, where — at all relevant times — Smith was the Assistant Resident Buildings Superintendent.  *See id.* ¶¶ 3, 23.

On September 9, 2021, an incident occurred involving Sanchez and another NYCHA Caretaker, Wydell Johnson.  ECF No. 35-10 ("Pl.'s SOMF"), ¶ 34.  As summarized in a NYCHA report, Sanchez pointed her fingers at Johnson, accused him of taking photographs of her, and said to him: "If you take another picture of me, you're going to see what happens to you."  *Id.* ¶ 35.  An investigator from NYCHA's Office of Safety and Security ("OSS") interviewed Johnson, who explained that he had been "tak[ing] pictures of the garbage not [Sanchez]."  ECF No. 29-10.  The following day, September 10, 2021, NYCHA issued Sanchez a counseling memorandum reminding her that NYCHA rules prohibit violent conduct — whether verbal or physical — and that such conduct in the future could lead to discipline.  *See* ECF No. 29-11.  Sanchez submitted a written rebuttal to the counseling memorandum, claiming that she "was nice to [Johnson]" and "politely told him [to] stop taking pictures of [her]."  ECF No. 29-14.

Between July and September 2021, Sanchez was involved in three separate incidents with another NYCHA employee, Johny Jordan.  First, in July 2021, Jordan was assigned to "pick up the garbage" in front of Sanchez's building at Grant Houses but allegedly refused to do so and, on several occasions, referred to Sanchez as a "bitch."  Pl.'s SOMF ¶¶ 48-49.  Sanchez complained to a supervisor (including informing the supervisor that Jordan had called her a "bitch"), and NYCHA reassigned Jordan to another building.  *Id.* ¶ 49.  Thereafter, however, Jordan showed up at her building and continued to threaten her.  *Id.* ¶ 28.  In September 2021, while Sanchez and another female co-worker were standing together, Jordan allegedly said "I

could slap this bitch" while "singing a song" and "looking straight at" them. ECF No. 35-1 ("Pl.'s Dep. Tr."), at 22. Sanchez and the coworker ignored Jordan, who allegedly threatened to bring outsiders to the job site to harm them. Pl.'s SOMF ¶¶ 52-53.

The third and most significant incident involving Sanchez and Jordan occurred on September 30, 2021. On that day, Jordan looked at Sanchez and said: "I feel like I just want to slap out this bitch." Pl.'s Dep. Tr. 36. Sanchez responded: "Who are you going to slap?" *Id*. Jordan then "got angry and started cursing everybody out," including Sanchez. *Id*. Sanchez complained to Smith, who submitted an incident report the same day to OSS. Pl.'s SOMF ¶¶ 65-66. In the report, Smith wrote that Sanchez and Jordan had "argue[d] to the point that the NYPD had to be called" and that "[b]oth were asked to leave the development." ECF No. 29-16. Smith requested help from OSS because she "need[ed] both removed from [her] development as soon as possible for the safety of the rest of [her] staff." *Id*. Smith also emailed the Manhattan Property Management office about the incident, stating that "Ms. Sanchez and Mr. Jordan cannot come back to the development" and requesting the office to "please remove Ms. Sanchez from Grant Houses immediately." ECF No. 29-19. Finally, Smith prepared a written statement and drafted counseling memoranda for both Sanchez and Jordan, which were served on them the next day, October 1, 2021. Pl.'s SOMF ¶¶ 68-70; *see* ECF Nos. 29-20–22.

That same day, the property manager, Esther Cid, requested that both Jordan and Sanchez be terminated from NYCHA. Pl.'s SOMF ¶¶ 72-73. Specifically, at 1:19 p.m., Cid emailed NYCHA's Human Resources Department to "request[]" that Jordan be terminated for "workplace violence, Poor time and attendance." ECF No. 29-23. Eight minutes later, at 1:27 p.m., Cid emailed several people in the Manhattan Property Management office "requesting" Sanchez's termination for the same reasons. ECF No. 29-24. Cid indicated in that email that she

3

would forward the request to the Human Resources Department if her colleagues concurred. *See id.* A minute later, the Director of Manhattan Property Management expressed her agreement and, at 4:21 p.m. the same day, the request was forwarded to the Human Resources Department. *See id.* October 1, 2021, was a Friday, however, and the decision to terminate Sanchez (and Jordan) was not implemented until the afternoon of Tuesday, October 5, 2021. Pl.'s SOMF ¶¶ 97-100.

In the meantime, one final incident — involving Sanchez and yet another NYCHA employee, Michael Ward — took place. *Id.* ¶ 77. Sanchez alleges that, on the afternoon of October 4, 2021, Ward groped her breast while he was speaking to another NYCHA employee during a fire drill. *Id.* ¶¶ 80-81. At approximately 6:30 p.m. the same day, she reported the incident to Smith over the telephone. *Id.* at ¶ 88. The following morning, Sanchez went to report the incident to Cid, who allegedly did not have time to discuss it immediately. *See id.* ¶¶ 90-92. That same morning, the Human Resources Department approved Cid's October 1, 2024 requests to terminate Sanchez and Jordan. *Id.* ¶¶ 97-98; *see* ECF No. 29-23–24. At approximately 2:40 p.m. that day, Jordan was served with a termination notice; at approximately 4:45 p.m. that day, Sanchez was served with a termination notice. *See* Pl.'s SOMF ¶¶ 99-100.

After Sanchez was terminated, OSS interviewed her about the incident with Ward and then referred the matter to NYCHA's Department of Equal Opportunity ("DEO") for further investigation. *See id.* ¶¶ 101-02. Thereafter, however, DEO learned that Ward was arrested and charged by the New York City Police Department with sexual abuse in connection with the incident. *See id.* at ¶ 104. In accordance with its standard procedures with respect to investigating criminal conduct, DEO did not investigate the incident further. *See id.* ¶¶ 103-05.

Sanchez submitted a complaint to the U.S. Equal Employment Opportunity Commission, and received a right to sue letter on July 12, 2023. *See* ECF No. 1 ("Complaint"), ¶¶ 4-5. This lawsuit followed.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in

5

evidence," and must "show that the affiant or declarant is competent to testify on the matters stated." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

The Second Circuit has observed that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often a central factual issue. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Indeed, just like plaintiffs in other types of cases, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up). That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Colum. Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

Sanchez brings sex discrimination, hostile work environment, and retaliation claims pursuant to Title VII as well as state and city law. The Court will begin with her claims under Title VII, which are brought against NYCHA only.

### A. Sex Discrimination

Discrimination claims are subject to the well-established three-step, burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See,*

*e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under that framework, a plaintiff must first establish "a prima facie case of discrimination." *Id.* at 803. To do so, she must show that (1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See, e.g., Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *accord Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). If the plaintiff does so, "the burden 'shifts to the employer to articulate some legitimate, nondiscriminatory reason' for the employer's action against the employee." *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86 (2d Cir. 2022) (alteration omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). "If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination." *Id.* Notably, if the employer articulates a legitimate, non-discriminatory reason, the "plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of [prohibited] discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

Measured against these standards, Sanchez's discrimination claim plainly falls short. Indeed, she fails to establish even a *prima facie* case because she points to no evidence that could give rise to an inference of discriminatory intent. In fact, she herself attributed her termination to reasons other than her sex, testifying that she was fired because she had "bec[o]me the talk of town because [she] d[id] music" and "was a good artist." Pl.'s Dep. Tr. 94. At best, Sanchez argues that NYCHA's "disparate treatment between her and Mr. Jordan" gives rise to an inference of discriminatory intent. ECF No. 34 ("Pl.'s Opp'n"), at 8. But this argument is

borderline frivolous, not the least because she and Jordan were treated *identically* following the September 30, 2021 incident — NYCHA issued counseling memoranda to, and then terminated, them both. *See* Pl.'s SOMF ¶¶ 72; 98-100. Nor, contrary to her suggestions now, were Sanchez's earlier complaints about Jordan ignored. Sanchez herself testified that after she reported the first incident with Jordan, NYCHA removed Jordan and never assigned him to clean the same building as Sanchez again. *See* Pl.'s Dep. Tr. 67 ("I got him removed right there . . . . [T]hey never put us together again."). Thus, Sanchez fails to establish even a *prima facie* case of sex discrimination.[1]

Even if Sanchez could establish a *prima facie* case of discrimination, her claims would fail at the third *McDonnell Douglas* step because NYCHA proffers legitimate, non-discriminatory reasons for her termination — namely, her violation of NYCHA's workplace violence policies, as well as her poor time and attendance record. *See* Pl.'s SOMF ¶¶ 72-75, 95-100. Sanchez argues that NYCHA's explanations for her termination are pretextual because she previously received "stellar reviews for job performance" and none of her evaluations indicated "that she was violent." *See* Pl.'s Opp'n 6-7. But Sanchez's "stellar reviews" predated the violent incidents that occurred in September 2021 that gave rise to her ultimate termination. And

---

[1] The fact that Jordan called Sanchez a "bitch" — a gendered term — could theoretically have supported an inference of discriminatory intent, but for the fact that there is no connection between Jordan's use of the word and NYCHA's decision to terminate her. *See Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 286 (S.D.N.Y. 2009) ("Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." (internal quotation marks omitted)); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." (internal quotation marks omitted)). Indeed, as discussed below, Jordan's treatment of Sanchez cannot be imputed to NYCHA for purposes of Title VII liability.

Sanchez's time and attendance problems — which included being absent twenty-four days, seven without leave, in her last quarter — were indeed documented. *See* Pl.'s SOMF ¶¶ 28, 30-32. That Sanchez denies making any violent or threatening statements, *see id.* ¶¶ 34, 68, 73, 89, 93, and subjectively disagrees with NYCHA's reasons for her termination, *id.* ¶ 100, are not enough to withstand summary judgment. *See Hawkins v. N.Y. State Off. of Mental Health*, No. 17-CV-649 (NSR), 2019 WL 4520801, at *12 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 845 F. App'x 9 (2d Cir. 2021) (summary order) ("Plaintiff's own self-serving statements, in her affidavits, memoranda, and deposition are simply insufficient to overcome her burden of proof to survive summary judgment, as they are all self-serving statements uncorroborated by any additional evidence."); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015) ("A plaintiff cannot merely rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment."). The contemporaneous record makes plain that NYCHA terminated Sanchez for the reasons it provided and not because of sex discrimination.

**B. Hostile Work Environment**

Next, Sanchez brings a hostile work environment claim under Title VII. To survive summary judgment on a hostile work environment claim, a plaintiff must "produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023) (internal quotation marks omitted). Significantly, however, "[b]eyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer" in order to hold the employer liable under Title VII. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010); *see, e.g., Del Villar v. Hyatt Hotel Corp.*, No. 19-CV-10891 (JMF), 2022 WL 2316205, at

\*5 (S.D.N.Y. June 28, 2022).  Where, as here, the plaintiff alleges misconduct by a co-worker rather than a supervisor, the employer is liable "only if it was negligent in controlling working conditions."  *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  In particular, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (internal quotation marks omitted).

Here, assuming *arguendo* that Jordan's comments and Ward's alleged physical contact with Sanchez were more than mere "isolated acts" and could "meet the threshold of severity or pervasiveness" to constitute a hostile work environment — a dubious assumption — there is no basis to impute these actions to NYCHA.  *See Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (citing cases).  Sanchez does not contend that NYCHA "failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  *Summa*, 708 F.3d at 124.  Indeed, as discussed above, it is undisputed that NYCHA took action each time that Sanchez reported an incident involving Jordan.  *See* Pl.'s SOMF ¶¶ 50, 72, 98-99.  NYCHA also took actions to investigate the Ward incident, speaking with Sanchez and referring the investigation to DEO.  *See* Pl.'s SOMF ¶¶ 101-02.  Once DEO learned that Ward had been arrested and charged with sexual abuse by the police, however, DEO did not investigate further in accordance with its standard operating procedures for dealing with criminal conduct.  *See* Pl.'s SOMF ¶¶ 103-05.  Accordingly, there is no basis for imputing any of these acts to NYCHA.

## C. Retaliation

Sanchez's final Title VII claim is for retaliation. It too is subject to the three-step, burden-shifting framework. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). "To establish a prima facie case of unlawful retaliation under Title VII, "an employee must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (cleaned up). If the plaintiff does so, then "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845. And if the employer carries that burden, then the burden shifts back to the plaintiff, who must establish that the "non-retaliatory reason is a mere pretext for retaliation." *Id.* Notably, however, the plaintiff must show that retaliation was a "but-for" cause of the adverse action, not simply a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348-52 (2013).

Here too, it is doubtful that Sanchez could establish a *prima facie* case of retaliation. Although she now claims that she complained about discriminatory treatment on the basis of sex as early as July 2021, *see* Pl.'s Opp'n 11, that claim is not supported by the record, which suggests that her first such complaint was on October 4, 2021, when she reported the Ward incident to Smith, *see* ECF No. 29-29; *see also* ECF No. 36, at 4-6 (discussing Sanchez's deposition testimony with respect to her July 2021 complaints). By then, however, NYCHA had already made the internal decision to fire Sanchez. *See, e.g.*, *Adams v. N.Y. State Unified Court Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the

action was set in motion before a plaintiff engaged in protected activity."); *Tse v. N.Y. Univ.*, No. 10-CV-7207 (DAB), 2013 WL 5288848, at *17 (S.D.N.Y. Sept. 19, 2013) (rejecting a retaliation claim where, as here, the internal "decision to remove Plaintiff" was made before the alleged protected activity and citing cases). In any event, even if Sanchez could establish a *prima facie* case of retaliation, her claim would fail at the third stage for much the same reasons that her sex discrimination failed at that stage. That is, NYCHA demonstrated that Sanchez was terminated for legitimate, nondiscriminatory reasons, and there is no evidence to rebut that explanation, let alone show that retaliation was actually the "but-for" cause of her termination.

**D. State and Local Claims**

For the foregoing reasons, NYCHA is entitled to summary judgment on all of Sanchez's federal claims. Thus, the Court must decide whether to exercise supplemental jurisdiction over her claims against Defendants under the NYSHRL and NYCHRL. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* In light of that, and mindful that the law governing NYSHRL claims following the statute's amendment in 2019 is still developing, Sanchez's state and city law claims are "best left to the courts of the State of New York." *Halkitis v. N.Y.C. Dep't of Educ.*, No. 19-CV-11753 (JMF), 2022 WL 392911, at *7 (S.D.N.Y. Feb. 9, 2022) (internal quotation marks omitted); *accord Maxius v. Mount Sinai*

*Health Sys. Inc.*, No. 21-CV-10422 (LGS), 2024 WL 4166157, at *9 (S.D.N.Y. Sept. 12, 2024) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims becase "[t]he requirements of the NYSHRL after the 2019 amendment are still developing"); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x. 88, 92-93 (2d Cir. 2011) (summary order) (declining to decide plaintiff's claims under state and city law on the ground that they were "arguably governed by different legal standards" and the relevant law of New York was "still developing"). Thus, the Court declines to exercise supplemental jurisdiction over Sanchez's remaining state and city claims for sex discrimination, hostile work environment, and retaliation.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment must be and is GRANTED. Specifically, Sanchez's claims under Title VII are dismissed with prejudice, while her NYSHRL and NYCHRL claims are dismissed without prejudice to refiling in state court. The Clerk of Court is directed to terminate ECF No. 27, to enter judgment in Defendants favor consistent with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: December 16, 2024
      New York, New York

                                          JESSE M. FURMAN
                                       United States District Judge